**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

KEVIN MENGE,

                Plaintiff,

vs.

SIMON'S TRUCKING, INC.,

                Defendant.

No.  C20-1016-LTS

**MEMORANDUM OPINION AND
ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT**

_____

## I.    INTRODUCTION

This case is before me on cross motions for partial summary judgment.  Simon's Trucking seeks summary judgment on Counts I and II, in part, and on Counts III, IV and V in their entirety (Doc. 23).  Menge has filed a resistance (Docs. 39, 44) and Simon's Trucking has filed a reply (Doc. 57).

Menge seeks summary judgment on part of Count I (Doc. 32).  Simon's Trucking has filed a resistance (Doc. 47) and Menge has filed a reply (Doc. 51).  Menge has requested oral argument, but I find it to be unnecessary.  *See* Local Rule 7(c).

## II.    PROCEDURAL HISTORY

On May 5, 2020, Menge filed a complaint (Doc. 1) asserting claims under the Family Medical Leave Act (FMLA) (Count I) and the Fair Labor Standards Act (FLSA) (Count II) against Simon's Trucking.  On August 24, 2020, he filed an amended complaint (Doc. 15) to add claims for disability discrimination and retaliation under both the Iowa Civil Rights Act (ICRA) (Count III) and the Americans with Disabilities Act

(ADA) (Count IV) and age discrimination under the ICRA (Count V).[1]

Simon's Trucking then filed a motion (Doc. 16) to dismiss all claims in Counts III, IV and V on grounds that they are untimely, as they arose more than 300 days before Menge filed his administrative complaint with the ICRC and EEOC. In an order (Doc. 21) filed on December 8, 2020, I granted Simon's Trucking's motion and limited the scope of Counts III, IV and V to events that occurred after July 5, 2019. This case is set for a jury trial beginning October 18, 2021.

### III. *SUMMARY JUDGMENT STANDARDS*

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence

---

[1] Menge filed an administrative complaint with the Iowa Civil Rights Commission (ICRC) and the Equal Employment Opportunity Commission (EEOC) on April 30, 2020, and obtained right-to-sue letters soon after filing the amended complaint. Docs. 15 at 13–17; 17 at 1.

that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996). On cross motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A

3

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998).

No unique summary judgment standards apply to employment discrimination cases. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (en banc) (rejecting prior decisions that applied a "discrimination case exception" to the analysis of summary judgment motions). Thus, "the focus of inquiry at the summary judgment stage 'always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of [the protected characteristic].'" *Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1018 (8th Cir. 2005) (quoting *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1336-37 (8th Cir. 1996)).

## IV. RELEVANT FACTS

The following facts are undisputed unless otherwise noted.

Menge began working for Simon's Trucking as a maintenance coordinator in 2009.[2] Doc. 47-1 at 1. His main responsibilities were coordinating truck repairs and body shop work, ensuring that replacement parts were in stock and supervising the truck wash bay. Docs. 39-1 at 6–10; 47-1 at 6–7. He typically worked from 5:30 a.m. to 6:00 p.m., approximately 55 to 60 hours per week, at a rate of $16.00 per hour for the first 50 hours of work and time-and-a-half for all additional hours. Doc. 39-1 at 13–14.

In October 2018, Menge sought and received leave under the FMLA to undergo coronary artery bypass surgery. *Id.* at 14. While he was on leave, Menge's work duties were performed primarily by Mike Schute, who began helping Menge perform some of his duties after being hired in 2016 and was also named as a maintenance coordinator in March 2018. Docs. 39-1 at 8–9; 47-1 at 2, 4. After continuing to receive treatment in

---

[2] Menge received the maintenance coordinator title a few years after being hired as a "parts and service manager," but there is no evidence that the change in title impacted any of his responsibilities. Docs. 39-1 at 2; 47-1 at 1.

4

the months following his surgery, Menge's doctors cleared him to return to work, without restrictions, on January 7, 2019. Doc. 47-1 at 2–3.

Menge spoke by telephone with his supervisor, Justin Philipp, a few days before he returned to work on January 7, 2019. Doc 47-1 at 10. Menge informed Philipp that he had received a job offer from another company that would pay him more and require fewer hours, but he wanted to remain with Simon's Trucking. *Id.*; Doc. 34 at 60. Menge told Philipp that it would be nice to work fewer hours and Philipp responded that he could accommodate that request if Menge chose to return. Doc. 47-1 at 10–11. The parties disagree, however, as to whether Menge and Philipp discussed how accommodating the request might affect Menge's work responsibilities and pay going forward.

When Menge returned to work on January 7, 2019, Philipp assigned him to work on an inventory maintenance and organization project. Doc. 39-1 at 15. This project included physically inspecting the inventory and repair tools, cleaning and reorganizing the inventory shelves, and updating the inventory report in Simon's Trucking's computer system. *Id.* Philipp expected Menge to focus on the inventory project for the entirety of each day. Doc. 52 at 13. Consequently, Menge rarely, or no longer, performed many of the duties he performed before his FMLA leave, such as maintaining the company's preventative maintenance program, coordinating repairs and body shop work, supervising and assigning projects to six to fifteen employees, and performing "lot checks" to see which trucks needed service. Docs. 47-1 at 6–7; 52 at 11–13. Schute continued to perform most of these tasks, as he did while Menge was on FMLA leave. Docs. 47-1 at 6–7; 52 at 11–13. Philipp also reduced Menge's workweek to 45 to 50 hours, though at a higher rate of $16.50 per hour and time-and-a-half for hours worked over 40 in a given week. Docs. 39-1 at 15; 47-1 at 11–12.

Shortly after returning to work, Menge realized that his new work schedule was not financially viable, as his reduction in hours lowered his pay by approximately $300 per week. Doc. 52 at 15. That reduction in hours also affected other benefits, such as decreasing the number of paid vacation days he accrued each month from ten to eight.

5

Doc. 47-1 at 14.  Menge asked Philipp if he could return to his pre-FMLA work schedule of 55 to 60 hours per week, but Philipp denied his request and told him that he would not be allowed to work the same number of overtime hours as he did before taking FMLA leave.  Docs. 47-1 at 12–13; 52 at 15–16.

Menge continued to work on the inventory project at a reduced number of hours until he injured his leg in June 2019.  Doc. 39-1 at 16.  Due to the leg injury and resulting diabetes-related complications, Menge took approximately six weeks off work.  *Id.*; Doc. 52 at 18.  During Menge's absence, Philipp hired Jeff Elliot to work as another maintenance coordinator.  Doc. 52 at 21.  Menge returned to work on August 5, 2019, and resumed working on the inventory project.  Doc. 39-1 at 17.

In December 2019, Philipp informed Menge that he was concerned about Menge's lack of progress on the inventory project.  *Id.* at 20.  Philipp had not given Menge a deadline by which to complete the project, but claims he expected the project to take approximately six months to complete.  Docs. 39-1 at 15; 52 at 22.  Whether Philipp expressed such concerns to Menge, or advised Menge of ways he could work more efficiently, before December 2019 is disputed.

In response to Philipp's concerns, Menge reported that the work was slow because of frequent interruptions and the thoroughness with which he cleaned and organized the inventory.  Doc. 52 at 23.  Menge also suggested changes to quicken his pace on the project.  *Id.*  Nevertheless, Philipp terminated Menge's employment on January 8, 2020.  *Id.*  When asked for a reason, Philipp told Menge that he had been taking too long on the inventory project and that his position was being eliminated.  *Id.*  Menge asked Philipp if he could return to his previous duties as a maintenance coordinator, but Philipp refused, stating he did not believe Menge could handle the stress of that position.  *Id.* at 24.

6

## V.    ANALYSIS

Menge asserts five claims against Simon's Trucking:

Count I – interference and retaliation under the FMLA;

Count II – failure to pay overtime wages under the FLSA;

Count III – disability discrimination and retaliation under the ICRA;

Count IV – disability discrimination and retaliation under the ADA; and

Count V – age discrimination under the ICRA.

Doc. 15.  Menge seeks summary judgment on part of Count I, his FMLA "interference" claim.  Doc. 32.  Simon's Trucking seeks summary judgment on Counts I and II in part and Counts III, IV and V in their entirety.  Doc. 23.  I will address the arguments for summary judgment on each count in order.

### A.    *Count I – FMLA Claims*

Under the FMLA, an employee is entitled to take "twelve weeks of leave from work during any twelve-month period if the employee meets certain statutory requirements."  *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012) (citing 29 U.S.C. § 2612(a)(1)).  Any employee who takes leave under the FMLA is entitled, upon returning from leave, to be restored to his or her former position or an equivalent.  29 U.S.C. § 2614(a)(1).  An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights provided under the FMLA.  *Id.* § 2615(a)(1).  It also may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA.  *Id.* § 2615(a)(2).  If an employer violates an employee's FMLA rights, the FMLA allows the employee to recover "consequential damages and appropriate equitable relief."  *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87 (2002); 29 U.S.C. § 2617(a).

Menge argues that Simon's Trucking violated the FMLA in two ways.  First, he argues that Simon's Trucking interfered with his FMLA rights by failing to reinstate him to his former position, or an equivalent position, when he returned from FMLA leave.

7

The Eighth Circuit recognizes this type of claim as an "entitlement claim," as Menge "alleges a denial of a benefit to which he was entitled under the [FMLA]." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015).

Second, Menge argues that Simon's Trucking fired him in retaliation for taking FMLA leave. While the Eighth Circuit recognizes retaliation as one of the three types of claims under the FMLA, Menge's allegations actually state a discrimination claim – he contends Simon's Trucking fired him because he exercised his rights under the FMLA, not that it retaliated "against him for opposing a practice made unlawful under the FMLA." *See id.* at 517–18; *Pulczinski*, 691 F.3d at 1007. As such, I will refer to Menge's FMLA claims as the "entitlement claim" and the "discrimination claim."

### 1.    *Entitlement Claim*

Menge seeks summary judgment on his entitlement claim. He must show (1) he was eligible for FMLA leave, (2) Simon's Trucking was on notice of his need for FMLA leave and (3) Simon's Trucking denied him benefits to which he was entitled under the FMLA. *Hasenwinkel v. Mosaic*, 809 F.3d 427, 432 (8th Cir. 2015). For purposes of these motions, Simon's Trucking disputes only the third element.

Menge argues that Simon's Trucking denied him benefits protected by the FMLA by failing to reinstate him to the same or an equivalent position after his return from FMLA leave. As noted above, the FMLA requires employers to restore employees returning from FMLA leave to the same "position of employment held by the employee when the leave commenced" or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)–(B). A position is "equivalent" when it "is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status[,] . . . [and] involves the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215. Reinstatement is guaranteed "even

8

if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence." *Id.* § 825.214.[3]

For several reasons, Menge argues that the inventory position to which he was assigned after his FMLA leave was not the same as or equivalent to his previous position as a maintenance coordinator. Before his FMLA leave, Menge's primary duties as a maintenance coordinator included maintaining Simon Trucking's preventative maintenance program, performing lot checks to see which vehicles needed repairs, ordering parts, and coordinating repairs and body shop work. After returning to work, however, Menge worked almost exclusively on the inventory project, while Schute primarily, if not exclusively, performed the duties of maintenance coordinator. Menge's hours were reduced from 55 to 60 hours per week to approximately 40 to 50 hours. Despite a 50 cents per hour pay increase, and overtime pay beginning at 40 hours instead of 50 hours, his weekly pay dropped by approximately $300. The reduction in hours also decreased the hours of paid vacation Menge accrued each month.

Simon's Trucking contends that these changes did not violate the FMLA. It argues that Menge was in fact returned to the same position he held before his FMLA leave because neither his title as maintenance coordinator, nor his authority to perform the duties of that position, were ever revoked. Menge may have performed some of his previous duties less frequently, but this was only because he was assigned to focus on organizing and maintaining inventory, which was one of his duties as a maintenance coordinator that he had not had time to perform before his FMLA leave. Even if the inventory position was not the same as Menge's prior position, Simon's Trucking argues that it was at least an equivalent position.

---

[3] An exception to the reinstatement requirement is that an employer does not have to reinstate an employee who is unable to perform an essential function of his or her job at the end of FMLA leave. *Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1030 (8th Cir. 2006). There appears to be no dispute that Menge remained qualified for the maintenance coordinator position upon his return from FMLA leave.

9

As for the changes to Menge's weekly pay and benefits, Simon's Trucking argues that Menge actually received a better compensation plan after taking FMLA leave. It notes that Menge received a 50-cent per hour raise and that he began receiving overtime pay at 40 hours instead of 50 hours. Because he worked approximately the same number of overtime hours before and after his FMLA leave, his opportunity to earn overtime pay was essentially the same. And while the reduction to Menge's hours reduced his weekly pay, it did not change the fact that he was compensated at a better rate. In any event, Simon's Trucking argues that any change in Menge's pay, benefits and duties after returning from FMLA leave was the result of Menge's own request for fewer hours and that it did not violate the FMLA by accommodating that request.

In evaluating whether positions are equivalent, courts look beyond whether the employee keeps his or her title to consider whether "the job duties and essential functions of the newly assigned position are materially different from those of the employee's pre-leave position." *Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083, 1091 (8th Cir. 2001). It appears undisputed that Menge's day-to-day responsibilities shifted after he returned from leave. *See, e.g.*, Doc. 52 at 12–13 (Simon's Trucking admitting that Menge stopped performing certain work or performed certain work less frequently upon his return from leave). Even if he had some inventory-related responsibilities prior to his leave, upon return, the inventory project became Menge's focus. *See, e.g.*, *id.* at 13. These changes cut in Menge's favor. *See Olinger v. Renville Cty. Hospital & Clinics*, 423 F. Supp. 3d 680, 688 (D. Minn. 2019) (plaintiff did not show as a matter of law that his post-FMLA leave position was materially different from his pre-leave position in part because the duties to which he was assigned "were a significant part of [his] responsibilities before his leave"); *Haskell v. CentraCare Health Sys. – Long Praire*, 952 F. Supp. 2d 838, 846 (D. Minn. 2013) ("Removing duties comprising a substantial component of Haskell's job . . . and replacing them with different duties requiring different skills . . . could reasonably be construed as a material change.").

The changes to Menge's pay and hours are less clear cut. Upon his return, Menge received an hourly raise but was assigned to work fewer hours. He did begin to earn overtime pay at 40 hours instead of 50 hours, but Philipp restricted him from working the same number of hours he had worked before taking FMLA leave. Doc. 52 at 16.

Cutting against Menge is the fact that the parties dispute to what extent he requested these changes. "FMLA does not prohibit an employer from accommodating an employee's request to be restored to a different shift, schedule, or position which better suits the employee's personal needs on return from leave . . . ." 29 C.F.R. § 825.215(e)(4); *see also Ward v. Sevier Cty. Gov't*, 440 F. Supp. 3d 899, 916 (E.D. Tenn. 2020) ("By granting Plaintiff's request for a different position upon return from leave, Defendant provided Plaintiff the FMLA benefits to which she was entitled."), *appeal dismissed*, No. 20-5315, 2020 WL 3442263 (6th Cir. May 19, 2020). Philipp and Menge had a telephone call in early 2019 prior to Menge's return from FMLA leave. The parties agree that Philipp and Menge discussed Menge working fewer hours upon his return from leave but they dispute the specifics of the conversation. Doc. 51-1 at 2. The parties also dispute the extent to which the conversation discussed changes to his job duties versus his doing a different job. *Id.* at 1.

While Menge presents a strong argument that he was not returned to an equivalent position, I find there to be a genuine dispute of fact as to whether this resulted from Menge's own request. Based on the record before me, granting summary judgment on Menge's entitlement claim is not appropriate. *Haskell*, 952 F. Supp. 2d at 847 ("[T]he test for equivalence . . . generally presents a fact question for the jury . . . .) (citations omitted).

### 2. *Discrimination Claim*

Menge argues that Simon's Trucking discriminated against him for taking FMLA leave by first demoting him (placing him in the inferior inventory position with reduced

hours) and then terminating his employment. Simon's Trucking seeks summary judgment on this claim only as it applies to the termination of Menge's employment.

FMLA discrimination claims are evaluated under the *McDonnell Douglas* burden-shifting framework. *Pulczinski*, 691 F.3d at 1007. That framework first requires Menge to establish a prima facie case; he must show "(1) that he engaged in activity protected under the [FMLA], (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between [his] action[s] and the adverse employment action[s]." *Id.* This means showing that the alleged adverse employment actions "w[ere] motivated by [Menge's] exercise of rights under the FMLA." *Id.* at 1006–07. If Menge establishes a prima facie case, Simon's Trucking bears the burden of articulating a valid, non-discriminatory reason for the adverse employment action that was taken. *See Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011). If Simon's Trucking meets this burden, Menge must then show that the explanation Simon's Trucking proffered is pretext for discrimination. *See id.*

Simon's Trucking argues that Menge has failed, as a matter of law, to establish that Simon's Trucking's decision to terminate his employment one year after his return from FMLA leave was motivated by that leave. It asserts that there is no evidence of this alleged motivation other than the fact that the termination decision occurred after Menge took FMLA leave. According to Simon's Trucking, the termination decision occurred far too long after Menge's FMLA leave to create a genuine dispute as to whether the decision was motivated by that leave.

Menge appears to agree that there is little, if any, evidence that his FMLA leave played a direct part in Simon's Trucking's decision to terminate his employment a year later. However, he argues that Simon's Trucking is nonetheless liable for the harm caused by his termination because it was a direct result of Simon's Trucking's earlier act of discrimination – demoting him to the inventory position with reduced hours upon his return from leave. According to Menge, since employers are liable for all damages

12

caused by FMLA discrimination,[4] and there is a genuine issue of fact as to whether the assignment to the inventory position constituted FMLA discrimination, there is also a genuine issue of fact as to whether his subsequent discharge violated the FMLA.

Simon's Trucking responds by arguing that even if Menge's assignment to the inventory position constituted FMLA discrimination, Menge has failed to show that it directly led to his discharge. Simon's Trucking argues that Menge was fired for poor performance and has failed to show how his assignment to the inventory project caused his poor performance. Without a direct line of causation between Menge's assignment to the inventory position and his ultimate discharge for poor performance, Simon's Trucking contends that Menge's discriminatory termination claim fails regardless of the merits of his discriminatory demotion claim.

Simon's Trucking is correct that an interval of approximately one year is, on its own, too great to support a prima facie discrimination claim. *See, e.g., Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (finding a two-week interval "barely" sufficient to establish causation for plaintiff's prima facie case). But prior discriminatory actions may contribute to showing a causal connection. *Burciaga v. Ravago Americas, LLC*, 56 F. Supp. 3d 987, 1000 (S.D. Iowa 2014) (citing *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006)), *aff'd*, 791 F.3d 930 (8th Cir. 2015). Indeed, "[a]n employee may attempt to 'shorten the gap between her protected activity and the adverse action by showing that shortly after she [engaged in the protected activity, the employer] took escalating adverse and retaliatory action against her.'" *Hite*, 446 F.3d at 866 (quoting *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 503 (8th Cir. 2005)) (alteration in original).

As noted above, there remains an open question of whether Simon's Trucking discriminated against Menge in assigning him the inventory project upon his return from work. However, "intervening unprotected conduct" may break any connection between

---

[4] *See* 29 U.S.C. § 2617(a)(1)(A).

an employee taking FMLA leave and the employee's termination. *Lovelace v.*
*Washington Univ. Sch. of Med.*, 931 F.3d 698, 707 (8th Cir. 2019) (quoting *Kiel v.*
*Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc)). It is undisputed
that Philipp informed Menge in December 2019 that his progress on the inventory project
was inadequate. This intervening record of poor performance erodes any causal
connection between his requesting accommodation and his termination. *See Burciaga*,
56 F. Supp. 3d at 1000 (plaintiff's "series of mistakes" at work eroded causal connection
between protected activity and termination) (quoting *Kiel*, 169 F.3d at 1136).

Further, I find Menge's reliance on cases such as *Webb v. St. Louis Post-Dispatch*,
51 F.3d 147, 148–49 (8th Cir. 1995), to be unpersuasive. In *Webb*, the Eighth Circuit
observed that the defendant employer's ultimate decision to discharge the plaintiff "was
not directly motivated by his race, but by his unexcused absenteeism." *Id.* at 148. But
the court noted that there remained an outstanding question of whether the employer had
earlier discriminated against the employee by refusing him an accommodation. *Id.* This
raised a related question of whether the absenteeism would have occurred if the employer
would have granted the requested accommodation. *Id.* This consideration contributed
to the court reversing the district court's granting of summary judgment in the employer's
favor. *Id.* at 148–49.

The facts at issue here are materially different. Nothing in the record suggests
that Simon's Trucking's alleged demotion of Menge deprived him of something (an
accommodation, for example) that he needed to complete the inventory project. In other
words, even if he was discriminatorily demoted, there is no indication that this
discrimination affected his ability to perform his new tasks. Therefore, I find Menge
fails to establish a prima facie case of FMLA discrimination and Simon's Trucking is
entitled to summary judgment on Count I's discrimination claim as it pertains to Menge's
termination.

14

**B.  Count II – FLSA Claim**

Under the FLSA, certain employers must compensate non-exempt employees at overtime rates – at least one-and-a-half times their normal rates of pay – for hours worked in excess of statutorily-defined weekly maximums.  29 U.S.C. § 207.  An employee who does not receive overtime pay as the FLSA requires is entitled to recover the amount of unpaid overtime compensation from his or her employer.  *Id.* § 216(b).  The employee is also entitled to recover liquidated damages in the same amount unless the employer shows that it acted in good faith and reasonably believed that the acts or omissions comprising its violation did not violate the FLSA.  *Id.* §§ 216(b); 260.

Menge argues that Simon's Trucking willfully, and in bad faith, violated the FLSA before he took FMLA leave by paying him overtime wages only for time worked in excess of 50 hours per week instead of the statutorily-established 40 hours.  Because he argues that Simon's Trucking's violations were willful, he seeks to recover unpaid overtime, as well as liquidated damages in the same amount, for every violation that occurred up to three years before commencing this action.  *See id.* § 255(a) (establishing a three-year statute of limitations for willful violations compared to the normal two-year statute of limitations).

Simon's Trucking seeks summary judgment only on the issue of whether it willfully violated the FLSA.[5]  It argues that Menge's supervisors – including Philipp and Jill Proctor (Simon's Trucking's human resources manager) – attempted to ascertain the FLSA's requirements and believed that Menge's position and duties as a maintenance coordinator exempted him from the FLSA's overtime requirements.  Therefore, even if

---

[5] In its initial motion for summary judgment, Simon's Trucking sought summary judgment on Count II in its entirety, arguing that it did not violate the FLSA because Menge was exempt from its overtime provisions.  Doc. 26 at 18. However, after considering Menge's position, Simon's Trucking withdrew its motion for summary judgment as to whether Menge was exempt from the FLSA's overtime provisions and whether it acted in good faith.  *See* Doc. 57 at 20.

Philipp's and Proctor's conclusions are found to be erroneous, Simon's Trucking argues that their error cannot constitute, as a matter of law, willful infringement of the FLSA.

Because the parties agree that there is a genuine dispute as to whether Simon's Trucking's actions violated the FLSA, and whether it acted in good faith despite possible violations, I find it would be inappropriate to grant summary judgment for Simon's Trucking on the issue of willfulness. The Eighth Circuit has recognized that the issues of good faith and willfulness in the context of FLSA violations, though distinct, are intertwined. *See Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1084 (8th Cir. 2000). Many of the facts Simon's Trucking relies on to show that no violation of the FLSA was willful (e.g., that its employees sincerely attempted to ascertain the FLSA's requirements) also go to the issue of good faith are disputed. Therefore, like with the issue of good faith, I find that the willfulness issue is for the jury to resolve. Simon's Trucking's motion for summary judgment as to that issue will be denied.

## C.     *Counts III and IV – Disability Discrimination and Retaliation (ADA and ICRA)*

As claims under the ICRA are generally analyzed under the same framework as those under ADA, I will consider Simon's Trucking's arguments for summary judgment on Counts III and IV together. *See Sieverding v. Humach, LLC*, No. C18-1030-LTS, 2020 WL 966579, at *10 (N.D. Iowa Feb. 27, 2020) ("When the parties 'do not dispute the application of federal analysis, disability claims under the ICRA are generally analyzed in accord with the ADA.'") (quoting *Gretillat v. Care Initiatives*, 481 F.3d 649, 652 (8th Cir. 2007)).

### 1.     *Disability Discrimination*

Parties may prove intentional discrimination under the ADA either by direct or indirect evidence. *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 543 (8th Cir. 2018) (citing *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). Menge argues that he has presented direct evidence of disability discrimination. He argues in the

16

alternative that he puts forward sufficient indirect evidence of discrimination, analyzed pursuant to the *McDonnell Douglas* burden-shifting framework, for his claims to go to the jury. Simon's Trucking contests both arguments.

### a. Direct evidence of discrimination

"Direct evidence includes evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude, where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor." *Lipp*, 911 F.3d at 543 (quoting *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.,* 444 F.3d 961, 966 (8th Cir. 2006) (internal quotation marks omitted)). Menge cites the following as evidence of direct discrimination: (1) when Philipp informed Roger Simon (Simon's Trucking's owner and former president) of his decision to discharge Menge, Simon commented that he understood the decision because he thought Menge had "no giddy up and go, no walking fast[,] . . . no gumption;" (2) when Menge returned to work following surgery, Philipp explained that he was "looking out for Menge's health" in assigning him to the inventory project and Philipp later testified that he was concerned about Menge's physical capabilities; and (3) Philipp refused to accommodate Menge's disability, thereby demonstrating a discriminatory attitude. Doc. 44 at 12–14.

In evaluating whether statements constitute direct evidence of discrimination, courts consider the speaker, the content and the causal connection between the statements and the adverse employment decision. *Bauer v. Metz Baking Co.*, 59 F. Supp. 2d 896, 903 (N.D. Iowa 1999) (analyzing Eighth Circuit precedent in setting out these criteria). Simon's statements meet none of these criteria. First, the speaker does not have to be the decisionmaker but must be involved in the decision-making process. *Id.* Simon was not involved in the discharge decision. The testimony Menge cites make clear that Simon made these comments after Philipp informed him of that decision.

17

This same fact informs whether there is a causal connection between the statements and Menge's discharge. Because the statements occurred after Philipp had already decided to terminate Menge's employment, they could not have influenced the decision. Finally, although the content of Simon's comments related to Menge, they do not betray discriminatory animus toward the disabled. *Id.* at 905 ("Although the comments may have related to Bauer herself, they certainly do not relate to the abilities of older employees."). Indeed, these same comments could reasonably be made about an unproductive, non-disabled employee. *Id.* (noting that the kind of questions to which the plaintiff was subjected "are as commonly directed at persons in their twenties as to persons in their late fifties").

Nor do Philipp's statements constitute direct evidence of discrimination. "'Stray remarks in the workplace,' 'statements by nondecisionmakers,' and 'statements by decisionmakers unrelated to the decisional process' do not constitute direct evidence." *Schierhoff*, 444 F.3d at 966 (quoting *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993)). Philipp's statement that he was concerned for Menge's health occurred months before Menge's discharge and has no express connection to the termination decision. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) (finding no direct evidence of discrimination where none of the decisionmakers' alleged comments "were related to the decisional process itself"). When there is this significant separation in time, Menge must offer a "specific link between the comments and [his] termination." *Barkhoff v. Bossard N. Am., Inc.*, 684 F. Supp. 2d 1096, 1106 (N.D. Iowa 2010). Instead, Menge attempts to link this evidence to contemporaneous, allegedly adverse decisions made by Philipp (for example, Philipp allegedly demoting Menge). He then argues that these decisions ultimately "coalesced" in his termination. Doc. 44 at 14. In so arguing, Menge implicitly admits he lacks a direct link between the evidence and his termination. This is inconsistent with claiming to present direct evidence. *See Bauer*, 59 F. Supp. 2d at 906 ("The chain of inferences upon which

Bauer's 'causal link' argument relies is itself indicative of the fact that Kelly's questions simply are not 'direct' evidence of discriminatory intent.")

Finally, Menge argues that Philipp's alleged failure to accommodate a leg injury Menge sustained in June 2019 (an injury he alleges constitutes a disability) constitutes evidence of direct discrimination because it evinces a discriminatory attitude.[6] "[W]hen the plaintiff relies on a discriminatory 'attitude' in the workplace to justify *Price Waterhouse* analysis, there must be a showing of a causal relationship between that attitude and the adverse employment action." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 780 (8th Cir. 1995) (citing *Sargent v. Paul*, 16 F.3d 946, 948 (8th Cir. 1994)). The conduct Menge alleges as evidence of a discriminatory attitude did not occur in the decision-making process and Menge produces no other evidence that the alleged attitude infected Philipp's decision-making at the time of the discharge. Again, this is inconsistent with presenting direct evidence of discrimination. *Bauer*, 59 F. Supp. 2d at 906. For all of these reasons, Menge has failed to offer direct evidence of disability discrimination.

### b.  *Indirect evidence of discrimination*

Simon's Trucking argues that Menge cannot establish a prima facie case of disability discrimination because there is no evidence that his alleged disabilities factored into his termination. It further argues that even if Menge establishes a prima facie case, he cannot establish that Simon's Trucking's legitimate, nondiscriminatory reason for discharge was pretext. Menge disagrees as to both arguments.

Assuming without deciding that Menge can establish a prima facie case of disability determination, the parties do not appear to contest that Simon's Trucking has

---

[6] Simon's Trucking contests whether Menge's leg injury constituted a disability, arguing it was "transitory and minor in nature." Doc. 57 at 8 n.2 (citing 29 C.F.R. § 1630.15(f)). It is not necessary to resolve this issue to decide this motion.

articulated a legitimate, non-discriminatory reason for terminating Menge.[7] The burden thus shifts back to Menge to show pretext. To do so, he must present sufficient evidence that Simon's Trucking's reason is false and that discrimination was the real reason for his termination. *Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010) (quoting *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008)) (per curiam). "Because the employer's 'motive and intent are at the heart of a discrimination case,' the central inquiry 'is whether [disability] was a factor in the employment decision *at the moment it was made*.'" *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 570 (8th Cir. 2007) (quoting *Sabree v. United Bhd. of Carpenters & Joiners Local No. 33*, 921 F.2d 396, 403 (1st Cir.1990)) (alteration and emphasis in original). "[E]vidence of pretext and discrimination is viewed in light of the employer's justification." *Chappell v. Bilco Co.*, 675 F.3d 1110 (quoting *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir. 2001)).

To show that the employer's reason was false, a plaintiff may argue, among other things, that the discharge contravened the employer's own policy or practice, that the employee was complying with the employer's reasonable expectations at the time of termination or that the employer treated the employee differently than similarly situated employees. *Canning v. Creighton Univ.*, 995 F.3d 603, 612–13 (8th Cir. 2021). Menge offers no evidence supporting any of these arguments. He does not allege that Simon's Trucking violated any of its own policies in terminating his employment. It is undisputed that Philipp had warned Menge that his progress on the inventory progress was

---

[7] When terminating Menge's employment in January 2020, Philipp explained that Menge failed to make timely progress on the inventory project. Doc. 52 at 23. This is a legitimate, non-discriminatory reason for discharge. *See McKey v. U.S. Bank Nat'l Ass'n*, 978 F.3d 594, 599 (8th Cir. 2020) (employee's failure to timely and efficiently complete assignments constituted a legitimate, nondiscriminatory reason for her termination); *Chambers v. Travelers Cos., Inc.*, 668 F.3d 559, 567 (8th Cir. 2012) ("performance deficiencies" constitute a non-discriminatory reason for termination).

insufficient a month prior to the discharge. And Menge has provided no comparator evidence.

Menge instead argues that Simon's Trucking acted inconsistently by neglecting the inventory project after his discharge. He argues that this demonstrates that the inventory project was not actually important to Simon's Trucking and instead was an excuse to discharge him. This argument is unavailing. Whether an employee is performing satisfactorily on a project and whether the project itself is worth continuing are distinct inquiries. An employer may find an employee's poor performance worthy of discharge and simultaneously believe that the project on which the employee has been working is not worth further investment. Indeed, Menge's argument would put employers and courts in untenable positions. To ward off liability, an employer might feel compelled to continue a project it would otherwise retire. If the employer abandons the project, a court may then ask to review whether that decision constituted sound business judgment. *But see Carter v. Pulaski Cty. Special Sch. Dist.*, 956 F.3d 1055, 1059 (8th Cir. 2020) ("Federal courts do not sit as super personnel departments reviewing the wisdom or fairness of the business judgments made by employers . . . .") (quoting *Edmund v. MidAmerican Energy Co.*, 299 F.3d 679, 685–86 (8th Cir. 2002)).

Menge has also failed to put forward sufficient evidence that the real reason for his discharge was discrimination. Simon's comments occurred after Philipp had decided to terminate Menge's employment, meaning those comments could not have affected Philipp's decision. *Bozue v. Mut. of Omaha Ins. Co.*, --- F. Supp. 3d ----, 2021 WL 1666849, at *15 (E.D. Mo. Apr. 28, 2021) ("[A]ctions and statements from a non-decisionmaker fall short of establishing pretext when they could not have influenced the decision.") (citing *Wittenburg v. Am. Exp. Fin. Advisors, Inc.*, 464 F.3d 831, 837 (8th Cir. 2006)) (sex discrimination context). Meanwhile, the comments from Philipp that Menge relies upon occurred months prior to Menge's termination and have no express connection to the termination decision. *See Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 428 (8th Cir. 1999) (a decision-maker's stray remarks "that are remote in time

21

do not support a finding of pretext for intentional age discrimination"); *Simmons v. Oce-USA, Inc.*, 174 F.3d 913, 916 (8th Cir. 1999) (race discrimination context).

Finally, Menge points to his allegation that Philipp demoted him and failed to accommodate him as evidence of pretext. In *Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 833–34 (8th Cir. 2000), *abrogated on other grounds*, *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011), the Eighth Circuit held that a court may consider an employer's earlier failure to accommodate an employee as evidence of intent and pretext. However, there are material differences between *Kells* and this case. In *Kells*, the plaintiff asserted a constructive discharge claim under the ADA and relied on three distinct denials of requested accommodations, along with other evidence, to demonstrate "a disregard for its obligations to Kells under federal disability laws." 210 F.3d at 830-34. The court held that this cumulation of evidence was sufficient to generate an issue of fact as to whether the defendant's actions were motivated by Kells' disability. *Id*. at 834. Here, Menge does not claim constructive discharge but instead relies on alleged events that are remote in time to argue that a decision to terminate his employment was motivated by discrimination. Moreover, the alleged, prior events do not contradict or otherwise address the legitimacy of Simon's Trucking's reason for terminating Menge. *See Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1036 (8th Cir. 2005) ("Her only possible evidence of pretext—that Ford had discriminated against her in the distant past and (might have) failed to accommodate her in the recent past—are not close in time to the alleged adverse employment action, and are not related to the legitimacy of such action.") (similarly analyzing and distinguishing *Kells*).

For all of these reasons, Menge has failed to put forward sufficient evidence that Simon's Trucking's stated reason for terminating him was pretext for discrimination. Simon's Trucking is entitled to summary judgment on his ADA and ICRA disability discrimination claims.

## 2. Retaliation

Within Counts III and IV, Menge also alleges that Simon's Trucking's decision to terminate his employment was motivated by retaliation for his accommodation requests. Doc. 15 at 8, 10. He requested accommodations when he had his heart surgery in October 2018 and when he sustained a leg injury in June 2019. Simon's Trucking argues that Menge fails to establish a causal connection between these requested accommodations and his discharge. Simon's Trucking also argues that Menge failed to exhaust these claims.

Menge's response does not address either of Simon's Trucking's arguments as to his retaliation claim. "[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009). "[T]he non-moving party is responsible for demonstrating any genuine dispute of material fact that would preclude summary judgment." *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir.) (citing *id.*), *cert. denied*, 141 S. Ct. 894 (2020). Despite Menge's abandonment of his retaliation claims, I will address them to determine whether Simon's Trucking has demonstrated that it is entitled to summary judgment on those claims.

To succeed on a disability retaliation claim, "there must either be direct evidence of retaliation or an inference of retaliation must be created under the *McDonnell Douglas* burden-shifting framework." *E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 972 (8th Cir. 2014) (citing *Lors*, 746 F.3d at 865). In the absence of direct evidence, "a plaintiff must show that (1) she engaged in a statutorily protected activity, (2) the employer took an adverse action against her, and (3) there was a causal connection between the adverse action and the protected activity." *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013).

For the reasons stated above, with regard to disability discrimination, I find that Menge has not presented direct evidence of retaliation. Turning to the *McDonnell Douglas* framework, Simon's Trucking argues Menge fails to present a prima facie case

23

because he cannot establish a causal connection. Menge may point to the fact that his discharge followed his requesting accommodation. However, the decision to terminate employment was made many months after his request. *See Myers v. Hog Slat, Inc.*, 55 F. Supp. 3d 1145, 1158 (N.D. Iowa 2014) ("[T]he Eighth Circuit Court of Appeals has found that a discharge occurring within two weeks of a protected action was 'barely' sufficient to establish causation for purposes of a prima facie case.") (quoting *Smith*, 302 F.3d at 833). Further, the statements by Philipp and Simon that Menge cited to argue disability discrimination have no express connection to any request for accommodations. Indeed, and as set forth above, Philipp's statement came months before Menge's discharge and Simon's comments occurred after Philipp had already made the termination decision. Menge provides no other evidence linking these requests to his termination. *See, e.g.*, *Orr v. City of Rogers*, 232 F. Supp. 3d 1052, 1067 (W.D. Ark. 2017) (plaintiff's comparator evidence contributed to a court finding causal connection between plaintiff requesting accommodation and plaintiff's termination).

Finally, "'intervening' negative conduct" by the plaintiff "erode[s]" causal connections between the adverse action and the protected activity. *Bernard v. St. Jude Med. S.C., Inc.*, 398 F. Supp. 3d 439, 466 (D. Minn. 2019) (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc)). It is undisputed that Philipp informed Menge in December 2019 that his progress on the inventory project was inadequate. This record of poor performance after his request for accommodation, but before his January 2020 discharge, thus erodes any causal connection between his requests for accommodation and the termination of his employment. *See Lenzen v. Workers Comp. Reins. Ass'n*, 705 F.3d 816, 822 (8th Cir. 2013) (employee's poor work performance and insubordination precluded any inference of a causal connection between the employee engaging in protected activity and the employee's termination).

For these reasons, Simon's Trucking is entitled to summary judgment on Menge's retaliation claims under the ADA and the ICRA.

*D.      Count V – Age Discrimination Claim (ICRA)*

Age discrimination claims brought under the ICRA are subject to the *McDonnell Douglas* burden shifting analysis. *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1083 (8th Cir. 2013) (citing *Tusing v. Des Moines Ind. Cmty. Sch. Dist.*, 639 F.3d 507, 514–16 (8th Cir. 2011)). Such claims are analyzed in the same fashion as claims brought under the Age Discrimination in Employment Act (ADEA), but the causation standards under the two statutes are "slightly different." *Id.* Specifically, the ADEA requires a showing of "but for" causation while the ICRA requires a showing and the ICRA requiring a showing that age discrimination was a "motivating factor." *Id.* (citing *DeBoom v. Raining Rose, Inc.*, 772 N.W.2d 1, 13 (Iowa 2009)).

Simon's Trucking argues that Menge cannot establish a prima facie case of age discrimination because he has presented no evidence that age was a factor in Simon's Trucking's discharge decision. Simon's Trucking also argues that even if Menge could establish a prima facie case, he has not produced evidence sufficient to show that Simon's Trucking's proffered reason for his discharge was pretext. Menge responds that there is sufficient evidence to create a jury question, including (1) Simon's Trucking hired an individual 25 years younger than Menge to replace him, (2) Philipp made remarks in the past that he wanted to hire "younger guys;" and (3) when Philipp informed Simon of his decision to terminate Menge, Simon observed that Menge lacked "giddyup and go," that he was not "walking fast" and that he lacked "gumption." Doc. 44 at 19. Menge also testified that Philipp once refused to hire a candidate due to the candidate's age. Doc. 23-2 at 59.

Simon's Trucking replies (1) that Philipp's alleged comments are dated and thus unrelated to the decision to discharge Menge and (2) that Menge's testimony regarding Philipp's refusal to hire a candidate is no more than a conclusory allegation of age discrimination. Regarding Simon's comments, Simon's Trucking argues that Simon was not the decisionmaker responsible for discharging Menge, that Simon's comments

25

occurred after Philipp had decided to terminate Menge's employment and that Simon's comments pertained to Menge's work ethic, not his age.

Assuming without deciding that Menge can establish a prima facie case of age discrimination, the parties again do not appear to dispute that Simon's Trucking has articulated a legitimate, non-discriminatory reason for terminating Menge's employment. The burden thus returns to Menge to produce sufficient evidence demonstrating pretext.

The fact that Simon's Trucking hired someone younger than Menge to replace him is not sufficient to create a jury question. *Carraher v. Target Corp.*, 503 F.3d 714, 719 (8th Cir. 2007) (citing *Nelson v. J.C. Penney Co., Inc.*, 75 F.3d 343, 346 (8th Cir. 1996)). Nor are Philipp's comments about hiring younger employees sufficient. According to Menge, Philipp made these comments "over the years." Doc. 39-2 at 16. But dated stray remarks do not establish pretext. *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 428 (8th Cir. 1999) ("[S]tray remarks . . . that are remote in time do not support a finding of pretext for intentional age discrimination."); *Reynolds v. Land O'Lakes, Inc.*, 112 F.3d 358, 363 (8th Cir. 1997) ("Because these statements were stale and unrelated to the decision-making process, we conclude that they were 'stray remarks,' insufficient to establish pretext."). Indeed, even comments that suggest "discriminatory feelings toward older employees in general" are insufficient to show pretext; the evidence must "directly deal" with "whether [the plaintiff] was discriminated against on account of age." *Gardner* v. *Wal-Mart Stores, Inc.*, 2 F.4th 745, 749 (8th Cir. 2021) (quoting *Hammer v. Ashcroft*, 383 F.3d 722, 727 (8th Cir. 2004)). Philipp's comments do not "directly deal" with the decision to discharge Menge.

Simon's comments are also insufficient to show pretext. "[C]omments and actions that could speak to age animus can generally support pretext only when they are made by the decision-maker or influence the decision-making process." *McMannes v. United Rentals, Inc.*, 371 F. Supp. 2d 1019, 1032 (N.D. Iowa 2005); *see also Hitt v. Harsco Corp.*, 356 F.3d 920, 925 (8th Cir. 2004) ("While we have noted that 'stray remarks' regarding age may be relevant to establishing a prima facie case or pretext under some

26

circumstances, such comments are not persuasive evidence of motive when the remarks are made by persons other than a decisionmaker.") (citing *McGirt v. McRentals, Inc.*, 337 F.3d 979, 983 (8th Cir. 2003)). Simon was not the decision-maker. Rather, it is undisputed that Philipp made the decision to terminate Menge's employment and later informed Simon of that decision. Further, the timing of Simon's comments preclude any finding that they show pretext. Because Philipp had already made the decision to discharge Menge prior to Simon's comments, the comments could not have influenced his decisional process.

Finally, as noted above, Menge testified that Philipp once refused to hire a candidate because of the candidate's age. Doc. 23-2 at 59. He provides no other information, such as the candidate's name or age, and no additional evidence that the candidate's age motivated Philipp's decision. *Id*. This testimony amounts to nothing more than a conclusory allegation of age discrimination and thus fails to support finding pretext. *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998) ("[U]nsubstantiated and conclusory allegations are insufficient to support an inference of pretext.") (citing D*avenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 (8th Cir. 1994)).

Menge has failed to produce sufficient evidence on which a reasonable jury could find pretext. Therefore, Simon's Trucking is entitled to summary judgment on Menge's claim for age discrimination under the ICRA.

## VI. CONCLUSION

Menge's motion (Doc. 32) for partial summary judgment is **denied**. Simon's Trucking's motion (Doc. 23) for partial summary judgment is **granted in part** and **denied in part**, as set forth in this order. As a result:

1.     The FMLA entitlement claim in Count I will proceed to trial.

2.     The FMLA discrimination claim in Count I will proceed to trial, but only as to Menge's alleged demotion upon returning from FMLA leave. The FMLA

discrimination claims in Count I is **dismissed** as to the termination of Menge's employment.

      3.      Count II will proceed to trial.

      4.      All claims set forth in Counts III, IV and V are **dismissed**.

**IT IS SO ORDERED.**

**DATED** this 1st day of September, 2021.

_____
Leonard T. Strand, Chief Judge

28